IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED

January 08, 2026

LAURA A. AUSTIN, CLERK
BY: /s/ Erica Jones
DEPUTY CLERK

|  |  |
|---|---|
| QUENTIN M. C.,[1] | ) |
| Plaintiff | ) |
| v. | ) Civil Action No. 7:25-CV-00038 |
| FRANK BISIGNANO, Commissioner of Social Security, | ) By: Hon. Michael F. Urbanski<br>) Senior United States District Judge |
| Defendant | ) |

## MEMORANDUM OPINION

Plaintiff Quentin M. C. ("Quentin") filed this action challenging the final decision of the Commissioner of Social Security denying his claim for disability insurance benefits ("DIB") under the Social Security Act, 42 U.S.C. §§ 423 and 1381a. In support of his application, Quentin argues that the determination of the administrative law judge ("ALJ") that he is not disabled is not supported by substantial evidence. Pl.'s Br., ECF No. 13. The Commissioner filed a response to which Quentin has replied. Comm'r's Br., ECF No. 15; Pl.'s Reply, ECF No. 16.

As discussed more fully below, the court finds that substantial evidence does not support the ALJ's determination that Quentin is not disabled. Accordingly, the Commissioner's determination that Quentin is not disabled is **VACATED** and this matter is

---

[1] Due to privacy concerns, the court adopts the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts use only the first name and last initial of the claimant in social security opinions.

**REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further development in accordance with this opinion.

### I. Judicial Review of Social Security Determinations

It is not the province of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990), and Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). The court will uphold a Social Security disability determination if "'(1) the ALJ applied the correct legal standards and (2) substantial evidence supports the ALJ's factual findings.'" Oakes v. Kijakazi, 70 F.4th 207, 212 (4th Cir. 2023) (quoting Arakas v. Comm'r Soc. Sec. Admin., 983 F.3d 83, 94 (4th Cir. 2020)).

A court may neither undertake de novo review of the Commissioner's decision, reweigh conflicting evidence, nor substitute its judgment for that of the ALJ. Id. Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Laws, 368 F.2d at 642. "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019) (quoting Consolidated Edison Co. v. NLRB, 305 U.S.

197, 229 (1938)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

Nevertheless, the court does not "'reflexively rubber-stamp an ALJ's findings.'" Oakes, 70 F.4th at 212 (quoting Arakas, 983 F.3d at 95). Remand is appropriate when the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." See Mascio v. Colvin, 780 F.3d 632, 636–37 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"). See also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often) (citation omitted).

## II. Claim History

Quentin was born in 1969 and completed one year of college. R. 199. He has past relevant work as a breakfast attendant and cook. R. 251-52. He filed his application for benefits on April 15, 2022, alleging an onset date of March 1, 2021. R. 208. He alleges disability based on anxiety, post-traumatic stress disorder (PTSD), schizophrenia, sleep apnea, feet, carpal tunnel, hypertension, neuropathy, chronic obstructive pulmonary disease (COPD), and eye problems. R. 250. His reported symptoms include being unable to focus, breathing problems including shortness of breath with minimal exertion, sleepiness caused by medications, anxiety attacks, memory and concentration problems, nervousness around people, chronic back pain, difficulty walking, and pain when standing and walking. R. 258–65, 51–52, 57–64.

The ALJ issued her determination following the administrative hearing, applying the five-step evaluation process described in the regulations. R. 19–31.[2] The ALJ first found that Quentin met the insured status requirements through September 30, 2026. He had not engaged in substantial gainful activity since his alleged onset date of March 1, 2021. The ALJ found that Quentin had severe impairments of obesity, asthma, COPD, hypertension, obstructive sleep apnea, schizophrenia, unspecified type, psychotic disorder, anxiety, PTSD, reactive depression, panic disorder with agoraphobia, insomnia, other social stressor, and auditory hallucinations. The ALJ found that Quentin's impairments, either singly or in combination, did not meet or equal a listed impairment. R. 19–23.

The ALJ found that Quentin had the residual functional capacity ("RFC") to do light work with the following additional limitations: no more than frequent balancing, stooping, kneeling, crouching, crawling, or climbing ramps and stairs; never climbing ladders, ropes, or scaffolds; no concentrated prolonged exposure to fumes, odors, dusts, gases, chemical irritants, environments with poor ventilation, temperature extremes, vibration, extreme dampness and humidity or exposure to hazards such as dangerous machinery and unprotected

---

[2] The ALJ makes a series of determinations: (1) Whether the claimant is engaged in substantial gainful activity; (2) Whether the claimant has a medically determinable impairment that is "severe" under the regulations; (3) Whether the severe impairment or combination of impairments meets or medically equals the criteria of a listed impairment; (4) Whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) Whether the claimant is able to do any other work in the national economy, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a) and 416.920(a). If the ALJ finds that the claimant has been engaged in substantial gainful activity at Step 1 or finds that the impairments are not severe at Step 2, the process ends with a finding of "not disabled." Mascio, 780 F.3d 632 at 634-35. At Step 3, if the ALJ finds that the claimant's impairments meet or equal a listed impairment, the claimant will be found disabled. Id. at 635. If the analysis proceeds to Step 4 and the ALJ determines the claimant's RFC will allow him to return to his past relevant work, the claimant will be found "not disabled." If the claimant cannot return to his past relevant work, the ALJ then determines, often based on testimony from a vocational expert, whether other work exists for the claimant in the national economy. Id. The claimant bears the burden of proof on the first four steps and the burden shifts to the Commissioner on the fifth step. Monroe, 826 F.3d at 178–79.

heights. Quentin was limited to occupations that required him to understand, remember, and carry out simple instructions and make simple work-related decisions. He could deal with occasional changes in a routine work setting, and could have no more than frequent interaction with supervisors and coworkers, and no more than occasional interaction with the public. R. 23–24.

Based on the testimony from a vocational expert, the ALJ found that Quentin could not return to his past relevant work as a sous chef. However, he could do other work in the economy, such as that of a produce weigher, a shipping and receiving weigher, and a routing clerk, and thus was not disabled. R. 31–32. Quentin sought review from the Appeals Council, which denied review on November 26, 2024. R. 1–5. This lawsuit followed.

Quentin argues that the ALJ erred in three ways when she determined that he was not disabled: (1) She failed to explain how she reconciled moderate limitations in concentration, persistence, and pace, established in the "B" criteria at Step 3 of the sequential evaluation process, with her omission of corresponding limitations in the RFC determination; (2) she failed to explain how she reconciled moderate restrictions in interacting with others, also established at the "B" criteria of Step 3, with her omission of corresponding limitations in the RFC determination; and (3) she failed to properly assess the supportability and consistency of the opinion of a nurse practitioner who opined that Quentin was limited to standing three hours in an eight-hour workday and would need a ten-minute rest break every hour.

### III. Analysis

Before reaching the mental RFC assessment at Step 4 of the sequential evaluation, the adjudicator must first determine whether a claimant has a severe mental impairment at Step 2

of the sequential evaluation, and if so, whether he meets a listing for a mental impairment at Step 3 of the sequential evaluation. In making the Step 3 determination, the adjudicator assesses an individual's limitations and restrictions described in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The mental disorders listings are set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1. See 20 C.F.R. §§ 404.1520a, 404.1525, 404.1526. The adjudicator determines whether the claimant's limitations are none, mild, moderate, marked, or extreme. 20 C.F.R. Part 404, Subpart P, Appendix 1 §§ 12.00(E) and 12.00(F).

To satisfy "paragraph B" criteria for a finding of disabled at Step 3, a person must have an "extreme" limitation of one, or a "marked" limitation of two of the four areas of mental functioning. Id. § 12.00(A)(2)(b). The areas of mental functioning are (1) understanding, remembering, and applying information; (2) interacting with others; (3) concentrating, persisting, and maintaining pace; and (4) adapting or managing oneself. Id. §12.00(E). Relevant to Quentin's case, a "moderate" limitation means the person has a fair ability to function in this area independently, appropriately, and effectively on a sustained basis. Id. §12.00(F)(2)(c).

Notably, the limitations identified in the listing criteria are not an RFC assessment, and the mental RFC assessment used at Steps 4 and 5 of the sequential evaluation process requires a more detailed assessment "by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings." Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184 at *4 (S.S.A. July 2, 1996). When determining a claimant's RFC at Step 4 of the sequential evaluation, the adjudicator considers the claimant's medical history, medical signs and laboratory findings,

the effects of treatment, reported daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms that are reasonably attributed to a medically determinable impairment, evidence from attempts to work, need for a structured environment, and work evaluations, if available. Id. at *5. The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and non-medical evidence. Id. at *7.

In Quentin's case, at Step 3 of the sequential evaluation, the ALJ determined that he had a moderate limitation in three of the four domains: interacting with others; concentrating, persisting, or maintaining pace; and adapting and managing oneself. R. 22. Because he did not have at least two "marked" limitations or one "extreme" limitation, the ALJ determined that he was not disabled based on the paragraph B criteria. Id. at 23.

Before deciding Quentin's RFC, the ALJ summarized the medical records that reflected his mental health diagnoses, including his history of anxiety attacks. She also cited to the effects of treatment, his reported daily activities, evidence offered by his mother, recorded mental status observations, medical source statements, and the effects of his symptoms that were reasonably attributed to a medically determinable impairment. R. 26–27. The ALJ noted that after Quentin's January 2022 hospital admission, his mental status examination showed that he was anxious, but cooperative with normal psychomotor activity. He had good attention, with intact immediate, recent, and remote memory; his thought processes were linear, logical, and goal-directed with no auditory or visual hallucinations; his insight was described as "present"; and he had good judgment. Id. at 26. He was treated with medication and advised to seek outpatient counseling. Id.

In March 2022, Quentin reported stress and anxiety related to a negative relationship over the previous two years, and said he heard voices arguing over decisions he had made. He also reported being social by having one or two drinks with family and friends every few days. In April 2022, notes from a psychiatric visit described him as having appropriate speech and good grooming and hygiene. He had a cooperative attitude with good eye contact, regular speech, and no abnormal movements. His mood was anxious, but his thought process was linear and goal-directed without auditory or visual hallucinations. Id. at 26–27. He was described as alert and fully oriented and of average intellect. His recent and remote memory were intact, as were his concentration and attention. He was noted to have partial insight and good judgment. Id. at 27. In June 2022, Quentin reported hearing voices and mumbling but remained in a supportive relationship with his mother and siblings. His sleep was "okay" and he was taking his medication intermittently. Psychiatric findings from 2023 noted a normal mood. Id.

The ALJ also cited Quentin's testimony, where he stated that he lives with his mother and his aunt and helps care for them, is able to drive but also gets rides from family and friends, reads and uses a computer, attends on-line church services, stays in the car on trips to the grocery store because he gets winded, watches television, takes care of his personal needs, does some housekeeping, and can make meals for himself and his mother. R. 27–28. The ALJ also summarized the third-party function report submitted by Quentin's mother, where she stated that Quentin has trouble with breathing, memory, focus, and anxiety attacks, that he sleeps a lot, can pay bills and count change, reads for enjoyment, watches movies, gets along with authority figures, handles changes in routine, finishes what he starts most of the time, and

follows spoken instructions well. R. 27. The ALJ also discussed the opinions of two medical care providers and the opinions of the state agency experts. R. 28–30.

After summarizing the record of Quentin's mental heath issues, the ALJ assigned the following limitations as part of his RFC:

> In terms of mental limitations, the undersigned considered a moderate limitation in concentrate, persist, or maintain pace <u>by limiting the claimant to simple instructions and decision-making</u>. The undersigned considered a moderate limitation in interacting with others by reducing the claimant to frequent interaction with people he works with such as coworkers and supervisors and only occasional interaction with the public in consideration of his panic and anxiety around others. The undersigned considered a moderate limitation to adapt or manage oneself by reducing the amount of change in a routine work setting to no more than occasional. As such, the above residual functional capacity is supported by and consistent with objective medical evidence.

R. 27 (emphasis added).

Quentin first argues that the ALJ did not adequately account for his moderate limitation in concentration, persistence, and pace because she limited him to simple instructions and decision-making and such a limitation does not account for limitations in concentration, persistence, and pace. Pl.'s Brief, ECF No. 13 at 7–8 (citing Mascio, 780 F.3d at 638). Quentin is correct.

The Social Security Administration describes what is meant by a person's ability to concentrate, persist, or maintain pace as follows:

> This area of mental functioning refers to the abilities to focus attention on work activities and stay on task at a sustained rate. Examples include: Initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work

9

> settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day.

20 C.F.R. Pt. 404, Subpt. P, App. 1 §12.00(E)(3). Given this description, it is unclear how a limitation to simple instructions and decision-making accommodates a deficit in a claimant's ability to maintain concentration, persistence, and pace. Rather, that limitation addresses the domain of understanding, remembering, and applying information, which encompasses the abilities to learn, recall, and use information to perform work activities.

> Examples include: <u>Understanding and learning terms, instructions, procedures; following one- or two-step oral instructions to carry out a task</u>; describing work activity to someone else; asking and answering questions and providing explanations; recognizing a mistake and correcting it; identifying and solving problems; sequencing multi-step activities; and <u>using reason and judgment to make work-related decisions</u>.

<u>Id.</u> § 12.00(E)(1) (emphasis added).

In addition, the <u>Mascio</u> court explained that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" <u>Mascio</u>, 780 F.3d at 638 (citing <u>Winschel v. Comm'r of Soc. Sec.</u>, 631 F.3d 1176, 1180 (11th Cir.2011)). This is so because "the ability to perform simple tasks differs from the ability to stay on task," and "only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." <u>Id.</u> The Fourth Circuit remanded Mascio's case so that the ALJ could explain why his moderate limitation in concentration, persistence, or pace at Step 3 did not translate into a limitation in his RFC. <u>Id.</u>

10

Notwithstanding the holding in Mascio, the Fourth Circuit clarified in Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020), that there is no "categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." Rather, an "'ALJ can explain why [a claimant's] moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation' in the claimant's RFC." Id. (quoting Mascio, 780 F.3d at 638). "'For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect [the claimant's] ability to work, in which case it would [be] appropriate to exclude it from the hypothetical tendered to the vocational expert.'" Id. (quoting Mascio, 780 F.3d at 638). In addition, a hypothetical question can also "'adequately account for a claimant's limitations in concentration, persistence, and pace when the questions otherwise implicitly account for these limitations.'" Id. (quoting Winschel, 631 F.3d at 1180).

In Shinaberry, the court found that the ALJ adequately explained why a limitation to simple, routine, and repetitive tasks accounted for Shinaberry's borderline intellectual disability and her moderate limitations in concentration, persistence, and pace. Id. at 121. In relevant part, the ALJ explained that he gave great weight to the findings of a consultative psychological examiner who opined that Shinaberry would have limits in her ability to complete a workweek in a job requiring math and reading calculation because of a weakness in her processing skills and also opined that her concentration and task persistence were adequate. Id. at 122. The ALJ further found that the consultative examiner's opinion was consistent with his examination results and with the evidence of record. Id.

11

The ALJ opinion in Quentin's case is more like the one in <u>Mascio</u> than the one in <u>Shinaberry</u>. The ALJ found that Quentin had a moderate limitation in his ability to maintain concentration, persistence, and pace, but did not account for that limitation in the RFC. To be sure, as the Commissioner points out, the ALJ thoroughly summarized the medical evidence, as well as Quentin's testimony, the information provided by his mother, and the opinions of the state agency physicians. However, his only reference to concentration, persistence, and pace incorporated the limitation to "simple instructions and decision-making," which does not address Quentin's ability to stay on task. The ALJ did not explain the effect his moderate impairment in concentration, persistence, and pace would have on his ability to stay on task and maintain a sufficient work pace to maintain competitive employment.

Nor does the ALJ's discussion of the state agency opinion assist the court in understanding the RFC assessment. The state agency medical expert found that Quentin had sustained concentration and persistence limitations, including a moderate limitation in his ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain attendance, sustain an ordinary routine without special supervision, and complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. R. 88. The ALJ discounted these findings, describing them as lacking support and being vague and/or ill-defined in vocational terms. R. 29. This discounting of the state agency expert opinion is confusing given that the ALJ also found that Quentin has a moderate

12

limitation in his ability to concentrate, persist, and maintain pace, which is encompassed by the state agency expert's opinion.

Nor did the ALJ clear up any confusion with her hypothetical questions to the vocational expert, as her questions made no reference to concentration, persistence, or pace. In response to a question by Quentin's counsel about "the threshold for being off task," the vocational expert testified that a person would be precluded from work if he were consistently off-task 15 percent of the time. R. 79. The vocational expert further stated that "during the probationary period, it is crucial that the individual be performing at the average pace rather than the below average pace." Id. The ALJ did not address these issues highlighted by the vocational expert and did not properly explain how Quentin's moderate limitation in this area translated to his ability to stay on task or maintain pace at work.

Quentin's case is similar to Linger v. Comm'r of Soc. Sec., No. 22-2192, 2025 WL 40548, at *5 (4th Cir. Jan. 7, 2025) (unpublished) (quoting Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 269 (4th Cir. 2017)), where the court found that an ALJ did not "'build an accurate and logical bridge from the evidence to his conclusion'" when he did not explain his mental findings at Step 3 and his RFC determination before reaching Step 4. In particular, the ALJ did not explain his finding that the claimant had a moderate impairment in his ability to maintain concentration, persistence, and pace.

> For example, while the ALJ determined certain functions he believed Linger could perform (e.g., "simple, routine and repetitive 1 to 2 step tasks" with "no fast paced production requirements") ... the ALJ said nothing about Linger's ability to perform them for a full workday, given the moderate limitations in Linger's ability to concentrate, persist, or maintain pace and moderate limitations in remembering information.

13

Id. (citing Mascio, 780 F.3d at 636).

The lack of explanation in Quentin's case becomes more pronounced when it is compared to his second argument, that the ALJ did not adequately explain how she accounted for his moderate limitation in interacting with others. Regarding that limitation, the ALJ explained that she "considered a moderate limitation in interacting with others by reducing the claimant to frequent interaction with people he works with such as coworkers and supervisors and only occasional interaction with the public in consideration of his panic and anxiety around others." R. 27. This explanation makes clear why the ALJ imposed the limitation on interaction with others in her RFC.[3] But there is no such clarity regarding why the ALJ limited Quentin to simple instructions and decision-making to accommodate his moderate limitation in concentration, persistence, and pace. Without the "logical bridge," between the finding of the "B" criteria and the limitations in the RFC, the court is left to guess at the effect this moderate limitation has on Quentin's ability stay on task and maintain pace for an eight-hour workday. Accordingly, the court finds that the ALJ determination is not supported by substantial evidence and this case must be remanded for further development.

---

[3] "Interacting with others" refers to the following:

> The abilities to relate to and work with supervisors, co-workers, and the public. Examples include: cooperating with others; asking for help when needed; handling conflicts with others; stating own point of view; initiating or sustaining conversation; understanding and responding to social cues (physical, verbal, emotional); responding to requests, suggestions, criticism, correction, and challenges; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness.

20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(E)(2).

Because the court finds it proper to remand this case based on the faulty RFC determination, Quentin's additional allegation of error is not addressed. See Mohammed H. v. Saul, No. TMD 20-1178, 2021 WL 1174720, at *7 (D. Md. Mar. 29, 2021) (citing Tanner v. Comm'r of Soc. Sec., 602 F. App'x 95, 98 n.* (4th Cir. 2015) (per curiam) (remanding on other grounds and declining to address claimant's remaining argument). However, upon remand, the Commissioner should take into consideration Quentin's remaining allegation of error.

## IV. Conclusion

The court concludes that the ALJ in this case erred when she did not "build the logical bridge" between her finding at Step 3 of the evaluation that Quentin has a moderate impairment in his ability to maintain concentration, persistence, and pace, and her lack of explanation as to whether or how she considered the limitation in arriving at Quentin's RFC. Accordingly, the court **VACATES** the Commissioner's decision that Quentin is not disabled and **REMANDS** this case to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further development in accordance with this opinion. This matter is **DISMISSED** and **STRICKEN** from the active docket of the court.

An appropriate order will be entered.

It is so **ORDERED**.

Entered: January 7, 2026

Michael F. Urbanski
Senior United States District Judge